Craig William REEVES, Appellant,

v.

The STATE of Texas, Appellee.

No. 249–88.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 12, 1990.

Rehearing Overruled Jan. 30, 1991.

Danny D. Burns, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall and David L. Richards, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S MOTION FOR REHEARING AFTER PETITION FOR DISCRETIONARY REVIEW REFUSED

MILLER, Judge.

A jury convicted appellant of the offense of unlawful delivery of amphetamine of an aggregate weight, including adulterants and dilutants, of more than 28 grams but less than 400 grams. See TEX.REV.CIV. STAT.ANN. art. 4476–15, sec. 4.031(a) and (c), (Vernon Supp.1988).[1] Upon appellant's plea of true to the State's enhancement allegations, the jury assessed punishment at forty-seven years and six months confinement in the Texas Department of Corrections and a fine of $60,000.00.

---

1. The Controlled Substances Act is now listed under the Health and Safety Code, Chapter 481. See V.T.C.A. Health and Safety Code, Sec. 481.-103 and Sec. 481.113.

On appeal, the Fort Worth Court of Appeals affirmed appellant's conviction in a published opinion. *Reeves v. State*, 743 S.W.2d 362 (Tex.App.—Fort Worth 1987). After originally denying appellant's petition for discretionary review, we granted appellant's motion for rehearing to determine whether the court of appeals erred in holding that the evidence was sufficient to prove the delivery of over 28 grams of amphetamine. See Tex.R.App.Pro. 200(c)(2). We will reverse.

The indictment in the present case alleged that appellant on or about November 26, 1985, "intentionally and knowingly deliver[ed] to J.E. Lee a controlled substance, namely: amphetamine of more than twenty-eight grams, but less than four-hundred grams by actually transferring said controlled substance." Since appellant asserts insufficiency of the evidence, a brief recitation of the pertinent facts is in order.

The testimony at trial demonstrated that for several months prior to his arrest, appellant had been under surveillance by undercover narcotics officers of the Fort Worth and Arlington Police Departments. While operating in an undercover capacity, Officers Joseph E. Lee and Ed Featherston made several contacts with appellant and arranged to purchase from appellant some amphetamine or "speed". On the day of appellant's arrest, Lee and Featherston went to appellant's residence to make the purchase. Officer Lee testified that he and appellant went inside appellant's house while Featherston waited outside. While inside, Lee told appellant that he and Featherston had in their car various items used in the process of manufacturing speed and that they were willing to trade the items for two ounces of speed.[2] Appellant told Lee that he had a quantity of "wet" speed available for sale, and that if Lee found that it weighed less than two grams when it dried out, then appellant would make up the difference the following day. Lee testified that he accepted appellant's offer. Lee then went outside to where

Featherston was waiting, and both officers then returned to the house with the items. At that time, appellant handed Lee a small plastic sandwich bag containing a "white wet powdery type substance." Lee placed the bag in his pocket, and he and Featherston then left the residence. Approximately thirty to forty-five minutes later, Lee, Featherston and several other police officers returned with a search warrant. Upon execution of the warrant, appellant was arrested and the items used in the transaction were seized.

Frank Shiller, director of the Fort Worth Police Department Crime Laboratory, testified that he performed tests on the substance delivered by appellant to Officer Lee and determined that the entire contents of the plastic bag weighed 29.7600 grams. Shiller further testified that based on his experience and the results of tests he performed on the substance, in his opinion, the material contained amphetamine. However, Shiller also stated that the exact percentage of amphetamine within the material was not determined. Shiller did not testify, furthermore, as to the nature of any other substances in the material besides amphetamine.

Appellant claimed on appeal to the court of appeals that this evidence was insufficient to prove guilt beyond a reasonable doubt. Based on a court of appeals decision in *Cruse v. State*, 722 S.W.2d 778 (Tex.App.—Beaumont 1986), appellant argued that because the indictment alleged that he delivered "amphetamine of more than 28 grams but less than 400 grams," the State was required to prove that the amount of pure amphetamine was more than 28 grams but less than 400 grams. In *Cruse*, the appellant was indicted for "intentionally and knowingly possess[ing] a controlled substance, namely: METHAMPHETAMINE of more than twenty-eight grams but less than four hundred grams." The Beaumont court of appeals held that an instructed verdict should have been

granted to appellant because the state did not prove beyond a reasonable doubt that the methamphetamine weighed more than 28 grams. The evidence revealed that the contents of a cup which was seized weighed 42.17 grams and contained some amount of methamphetamine, but the amount of actual methamphetamine present within that 42.17 grams of substance was not determined. The majority in *Cruse* held:

"Here, the indictment alleges the methamphetamine to be of more than 28 grams. It does not use the phrase "including its adulterants and dilutants". The state is bound by the allegations in its indictment and must prove them beyond a reasonable doubt."

*Cruse,* 722 S.W.2d at 780.

The court of appeals in the present case expressly rejected appellant's argument and implicitly disagreed with the holding in *Cruse.* In its reasoning, the court of appeals held that the language of Article 4476–15, Section 4.031(c), see fn. 1, *ante,* broadened the definition of "controlled substance" to include adulterants and dilutants; therefore, when the State alleges an offense under Section 4.031(c), the use of the term "controlled substance" encompasses adulterants and dilutants for purposes of determining the weight alleged. Thus, the court of appeals held that the proof adduced at trial did not vary from the indictment, and the evidence was sufficient to support a finding that appellant delivered more than 28 grams of amphetamine, including adulterants and dilutants. *Reeves,* 743 S.W.2d at 363. We disagree with the above reasoning.

The Texas Controlled Substances Act, Article 4476–15, provides the framework for regulating certain "controlled substances" which are defined within the Act as "drug[s], substance[s], or immediate precursor[s] listed in Schedules I through V or Penalty Groups 1 through 4 of this Act." Sec. 1.02(4). Subchapter 4 of the Act classifies offenses and punishment according to four "penalty groups," each of which contains certain listed controlled substances.

Section 4.031 describes the offense and punishment for the unlawful manufacture or delivery of controlled substances in Penalty Group 2, in which amphetamine is listed. Section 4.031(a) specifically provides:

"Except as authorized by this Act, a person commits an offense if he knowingly or intentionally manufactures, delivers, or possesses with the intent to deliver a controlled substance listed in Penalty Group 2."

An offense under Section 4.031(a) is a felony of the second degree. Sec. 4.031(b).

Section 4.031(c) provides:

"A person commits an aggravated offense if the person commits an offense under Subsection (a) of this section and the amount of the controlled substance manufactured, delivered, or possessed with the intent to manufacture or deliver is, by aggregate weight, including any adulterants or dilutants, 28 grams or more".

The punishment for an aggravated offense is 5 to 99 years and a fine of not more than $50,000.00 if the aggregate weight, including any adulterants or dilutants, is more than 28 grams but less than 400 grams. Sec. 4.031(d)(1).

In *McGlothlin v. State,* 749 S.W.2d 856 (Tex.Cr.App.1988), we held that the terms "adulterants" and "dilutants" refer specifically to compounds, substances or solutions added to the controlled substance with the intent to increase the bulk or quantity of the final product. *Id.,* at 858–59. Furthermore, where the State attempts to obtain a conviction for an aggravated offense under the theory that the aggregate weight of the controlled substance, including adulterants or dilutants, is over 28 grams, the State first must prove the existence of any adulterants or dilutants, i.e., compounds, substances, or solutions added to the controlled substance *to* increase the bulk or quantity of the final product. The State must then show that the controlled substance, plus any adulterants or dilutants, if proven to exist, weighs more than 28 grams. *McGlothlin,* 749 S.W.2d at 861; *Engelking v. State,* 750

S.W.2d 213 (Tex.Cr.App.1988); *Sloan v. State,* 750 S.W.2d 788 (Tex.Cr.App.1988).[3]

■ In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Cr.App. 1989). As we stated in *Butler:*

> We must take each case and review the entire body of · evidence to determine whether the State has proven beyond a reasonable doubt each and every element of the alleged crime and not just a plausible explanation of the crime.

*Butler,* 769 S.W.2d at 239.

Furthermore, this standard must be applied to the evidence and to a correct charge that corresponds to the indictment allegations. *Benson v. State,* 661 S.W.2d 708 (Tex.Cr.App.1982), reh'g denied; *Boozer v. State,* 717 S.W.2d 608 (Tex.Cr.App. 1984), reh'g denied. In *Benson,* we stated:

> There is an interaction between the indictment, proof and charge. The State shapes the indictment to charge a defendant with a particular offense. They then seek to prove all the elements of that offense. The next step is a sort of "codification" of the State's theory of prosecution, the particular statutory elements together with definitions, instructions, and defenses. The charge comprises these.

*Benson,* 661 S.W.2d at 715.

As noted earlier, the indictment in the present case alleged that appellant

> "intentionally and knowingly deliver[ed] to J.E. Lee a controlled substance, namely: amphetamine of more than twenty-eight grams, but less than four-hundred

grams, by actually transferring said controlled substance."

After presentment of the evidence at trial, the jury was then authorized by the trial court's instructions to convict appellant only upon finding from the evidence beyond a reasonable doubt that he did,

> "intentionally or knowingly deliver to J.E. Lee a controlled substance, namely: amphetamine of more than twenty-eight grams but less than four-hundred grams by actually transferring said controlled substance, as alleged in the indictment …"

The language of the above application paragraph of the court's charge mirrored the indictment; however, in the abstract portion of the court's charge, the trial judge further "defined" the weight of the controlled substance as follows: "[t]he weight of amphetamine is determined by its aggregate weight, including any adulterants or dilutants, if any." This served to complete the description of the aggravating element of Sec. 4.031(c) under which appellant was indicted. Therefore, the indictment alleged that the weight of the controlled substance was more than 28 but less than 400 grams, while the court's charge authorized conviction under a different theory by allowing any adulterants and dilutants to be considered in determining the weight.[4]

■ Under either theory of culpability, however, we find the evidence insufficient. As stated previously, Frank Shiller testified that while the entire contents of the plastic bag weighed 29.7600 grams, he had no opinion as to how much of it was amphetamine. On direct examination by the prosecutor, Shiller testified as follows:

---

**3.** *McGlothlin* implicitly rejects the court of appeals' holding in this case that the term "controlled substance" as alleged in the indictment necessarily includes "adulterants and dilutants." See discussion, p. 545, *infra.*

**4.** There was no motion to quash the indictment alleging, for instance, that an offense under Sec. 4.031(a) could become an aggravated offense

under Sec. 4.031(c) under several theories of culpability and that the defendant required notice from the State as to which theory it would use to seek conviction. Furthermore, there was no objection to the court's charge on the ground, for instance, that the charge incorporated a theory of culpability not supported by the indictment. Thus we do not address the propriety of the court's charge to the jury.

PROSECUTOR: First question, Mr. Shiller, is: How much did the contents of the package weigh?

SHILLER: On weighing the contents of [the plastic bag], I determined the material to weigh 29.7600 grams.

\* \* \* \* \* \*

PROSECUTOR: And did you do a chemical analysis of the chemical nature of that substance?

SHILLER: Yes, sir. I performed a test. It was an instrument procedure involving the infrared spectrophotometer.

PROSECUTOR: And as a result of your experience and the readings that you got as a result of that analysis, did you make a determination as to the nature of that substance?

SHILLER: Yes, sir. Based on the testing I performed, it's my opinion that the material contained amphetamine.

PROSECUTOR: In excess of 28 grams?

SHILLER: Yes, sir.

Thus, at first glance, it would appear that Shiller determined that the amount of amphetamine within the material was in excess of 28 grams; however, on cross-examination by defense counsel, Shiller further testified:

DEFENSE COUNSEL: Okay. Did you determine what percentage of amphetamine was contained in the [plastic bag]?

SHILLER: No, sir, no quantitative estimation or analysis was performed on this material.

DEFENSE COUNSEL: Was one, in fact, requested?

SHILLER: No.

\* \* \* \* \* \*

DEFENSE COUNSEL: Why don't you determine the percentage of amphetamine in a particular substance?

SHILLER: The caseload would be the reason, the essential reason why we don't, because in doing a quantitative testing procedure, quite a bit of time is expended.

DEFENSE COUNSEL: So you would not have an opinion based on any test as to whether or not we're talking about one percent amphetamine or 97 percent amphetamine?

SHILLER: Not having done a quantitative estimation, I don't have any opinion about the quantity.

\* \* \* \* \* \*

DEFENSE COUNSEL: What type of tests and what period of time would it take to determine the percentage of amphetamine in [the plastic bag]?

SHILLER: Everything is set up, the standards are available and the instrumentation is set up, it could be done within an hour's time.

DEFENSE COUNSEL: For purposes of determining the weight of a substance for presentation as evidence in court, you weigh any precursor that might be still in there or any adulterants that might be added or anything that's contained in that substance; is that correct?

SHILLER: It's weighed collectively as received.

DEFENSE COUNSEL: So—but could you, in fact, determine the amount of amphetamine by weight contained in [the plastic bag]?

SHILLER: Yes.

DEFENSE COUNSEL: But based on what you have done, you have no opinion as to that?

SHILLER: I don't have an opinion.

DEFENSE COUNSEL: Could be one percent, could be 99 percent?

SHILLER: I don't know what it is.

DEFENSE COUNSEL: But it could be at either end of the scale, could it not, by weight and by percentage?

SHILLER: Yes.

Therefore, the evidence does not establish that the amount of pure amphetamine was over 28 grams. Furthermore, the record is absent any evidence as to the identity of the other substances in the plastic bag. Absent facts to show that the remainder of the material consisted of substances intended to increase the bulk or quantity of the final product, amphetamine, it cannot be said that the remainder was an adulterant or dilutant. *McGlothlin*, 749

S.W.2d at 861; *Engelking,* 750 S.W.2d at 217; *Sloan,* 750 S.W.2d at 789. Consequently, the evidence is insufficient to show that the aggregate weight of the controlled substance, including any adulterants or dilutants, was over 28 grams.

In response to the reasoning of the court of appeals below and the argument by the State that the use of the term "controlled substance" in the indictment, and presumably the charge, necessarily includes adulterants and dilutants because of the wording of Sec. 4.031(c), we find such an interpretation much too broad. Sec. 4.031(c) does not "define" a "controlled substance"; it describes an offense, and the language "if ... the amount of the controlled substance ... is, by aggregate weight, including any adulterants or dilutants, 28 grams or more" simply instructs as to how the weight of a controlled substance may be determined for purposes of establishing the aggravating element of that offense. As we stated previously, adulterants and dilutants are substances added to a controlled substance to increase the bulk or quantity of the controlled substance in its final form. *McGlothlin,* 749 S.W.2d at 860. Therefore, the term "controlled substance" does not necessarily include adulterants and dilutants.[5]

We hold that the evidence is insufficient to show that appellant delivered amphetamine of more than 28 grams, but less than 400 grams. Therefore, the judgment of the trial court and the court of appeals is reversed, and this cause is remanded to the trial court with instructions to enter a judgment of acquittal as to the offense of delivery of amphetamine of more than 28 grams but less than 400 grams.

CLINTON, J., concurs in the result.

McCORMICK, P.J., and BERCHELMANN, J., dissent.

---

5. Although neither appellant nor the State raises the point in their arguments, we are aware that the manufacture or delivery of the controlled substance "amphetamine" in particular poses additional considerations because of the way in which amphetamine is listed in the Controlled Substances Act. Section 1.02(4) defines "controlled substance" as "a drug, substance, or immediate precursor listed in Schedules I through V or Penalty Groups 1 through 4 of this Act." Section 4.02(c) covers Penalty Group 2 controlled substances and lists as prohibited "... *a material, compound, mixture, or preparation which contains any quantity of the following substances* having a potential for abuse associated with a depressant or stimulant effect on the central nervous system: *Amphetamine,* its salts, optical isomers, and salts of optical isomers;...." Section 4.02(c)(3) (emphasis added).

From the wording of this provision, the "controlled substance" prohibited may be: a) a material, compound, mixture, or preparation which contains any amount of a listed substance (e.g., amphetamine); or b) the listed substance in its "pure" form, since a "material" could consist of 100 percent of the listed substance. The distinction becomes important when the State seeks conviction for an aggravated offense under Sec. 4.031(c).

Where a material, compound, mixture, or preparation contains some quantity of a listed controlled substance, e.g., amphetamine, the "controlled substance" is that material, according to the statute. Section 4.02(c)(3). In that case, if the weight of the material is over 28 grams, then the aggravating element of Sec. 4.031(c) is met. On the other hand, the State may seek conviction under Sec. 4.031(c) for possessing, manufacturing, or delivering the "pure" substance, e.g., "pure" amphetamine. In that case, as we discussed previously, the State must prove either that the amount of the pure amphetamine weighs more than 28 grams or that the amount of pure amphetamine, plus any adulterants or dilutants, if proven to exist, weighs more than 28 grams.

The evidence in this case did show that appellant delivered a "material, compound, mixture, or preparation" containing some amount of amphetamine, and that the material weighed more than 28 grams. However, the charge to the jury did not allow a conviction under that theory, nor was appellant ever indicted under such an allegation.