Gerry Dwaine GIDDINGS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–90–00595–CR.

Court of Appeals of Texas,
Dallas.

Sept. 6, 1991.

Discretionary Review Refused
Jan. 8, 1992.

Hal E. Turley, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before ENOCH, C.J., and BAKER and BURNETT, JJ.

## OPINION

ENOCH, Chief Justice.

The court convicted Gerry Dwaine Giddings of attempted possession of cocaine in an amount of 400 grams or more and assessed punishment at twenty-five years' confinement and a $1,000 fine. In four points of error, Giddings asserts that the evidence is insufficient to support his conviction and that the trial court erred in overruling his motion to quash his indictment. We overrule Giddings's points of error and affirm the trial court's judgment.

## FACTS

Sergeant Rod Bray of the Dallas Police Department was handling the disposition of a prisoner's property. The prisoner had a pager which repeatedly displayed a phone number on the pager readout. Sergeant Bray called the displayed phone number. Giddings answered and asked Sergeant Bray, "where are my kilos." The Sergeant asked who it was and Giddings said, "You know who it is. Are you going to be able to get four kilos or not." The Sergeant said he could only provide three, and the parties began to negotiate the price. They agreed to a total sales price of $54,000. Giddings described the vehicle he would be driving and gave a grocery store parking lot as the site for the purchase.

Two undercover officers met Giddings and his two companions at the designated parking lot. They identified each other, then conversed about whether Giddings had the money and whether Officer Lozano, known to Giddings as Lupe, had the cocaine. Giddings displayed a large amount of money in a plastic bag to Officer Lozano and assured him that it was "54." Giddings asked if he could escort Officer Lozano to the officer's car to get the cocaine. Officer Lozano refused the request, walked to his vehicle, and gave the signal for the tactical officers to move in and make the arrests.

## FACTUAL IMPOSSIBILITY

Giddings first complains that the evidence is insufficient to sustain his convic-

tion because it was factually impossible for him to attempt to possess cocaine that did not exist. Giddings argues that the fact that the Officer had no cocaine to sell makes it factually impossible for him to attempt to possess cocaine.

 Factual impossibility is not one of the labeled defenses to prosecution for an offense. TEX. PENAL CODE ANN. §§ 8.01–8.06 (Vernon 1974); *Pelham v. State*, 664 S.W.2d 382, 385 (Tex.App.—Amarillo 1983, pet. ref'd). Rather, evidence of impossibility denies the existence of one or more of the necessary elements of the State's case. It becomes part of the whole evidence to be considered in determining whether the State discharged its burden to prove the accused is guilty of the offense charged beyond a reasonable doubt. *Pelham*, 664 S.W.2d at 385; *accord Flanagan v. State*, 675 S.W.2d 734, 745 (Tex.Crim.App.1984) (op. on reh'g). In determining the sufficiency of the evidence, we view all of the evidence in the light most favorable to the prosecution. The evidence is sufficient if any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 238 (Tex.Crim.App.1989).

 "A person commits the offense [of criminal attempt] if, with the specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." Tex. Penal Code Ann. § 15.01(a) (Vernon 1974). The element "with specific intent to commit an offense" has traditionally been interpreted to mean that the actor must have the intent to bring about the desired result. *Flanagan*, 675 S.W.2d at 741. Appellant's intent to effect the offense may be inferred from his acts. *See Romo v. State*, 568 S.W.2d 298, 304 (Tex.Crim.App.1977) (op. on reh'g); *Whitaker v. State*, 660 S.W.2d 615, 617 (Tex.App.—Corpus Christi 1983, pet. ref'd). Officer Lozano testified that he only took a bogus kilogram of cocaine to the drug sale. However, the evidence shows that in the course of several telephone conversations with Sergeant Bray, Giddings initiated the request to purchase cocaine, he requested more than the Sergeant said he could provide, and assured the Sergeant that he would arrive at the designated site with $54,000 in cash to purchase three kilograms of cocaine. Further, Giddings arrived at the site and identified himself to the undercover officer, he asked the officer if he had the cocaine and advised the officer that he had the purchase money, he displayed a large amount of currency and assured the officer that it was the agreed amount, and asked the officer if he could escort the officer to his vehicle to get the cocaine.

This evidence is sufficient for a rational trier of fact to find beyond a reasonable doubt that Giddings had the specific intent to possess more than 400 grams of cocaine and that his acts amounted to more than mere preparation that tended, but failed, to effect the intended possession. *Flanagan*, 675 S.W.2d at 740. We overrule Giddings's first point of error.

### PHYSICAL PROOF

In his second point of error, Giddings argues that the evidence is insufficient to sustain his conviction because the State failed to prove what it alleged. The State charged Giddings by indictment with "the specific intent to ... possess ... cocaine in an amount by aggregate weight *including any adulterants or dilutants* of 400 grams or more." (Emphasis added.) Giddings contends that *Reeves* requires the State to prove the aggregate weight of the cocaine *and* any substances added to it which constituted adulterants or dilutants. *Reeves v. State*, 806 S.W.2d 540, 542 (Tex.Crim.App.1990).

 In *Reeves* the Court of Criminal Appeals analyzed the Texas Controlled Substances Act and prior case law to determine the proof necessary to sustain a conviction for an aggravated offense of delivery of a controlled substance. The Court held that when the State is relying on a theory that adulterants and dilutants caused the aggregate weight of the cocaine to exceed 28 grams, the State must first prove that the non-cocaine substances were added to increase the bulk of the final product.

*Reeves,* 806 S.W.2d at 542. *Reeves* does not hold that, as a requisite for finding an aggravated offense for drug possession, the State must prove the cocaine was adulterated. To the contrary, we read *Reeves* to hold that when an indictment alleges a specific amount of controlled substance, the evidence is sufficient if the State proves either that (1) the amount of the controlled substance equals or exceeds the specific amount alleged or (2) the aggregate weight, if the State alleges and proves that adulterants or dilutants have been added, equals or exceeds the specific amount alleged. *See Reeves,* 806 S.W.2d at 542–545.

■ Giddings was charged with the aggrevated offense of attempted possession of 400 grams or more of cocaine. Applying *Reeves* to Giddings's case, the State was required to prove either the cocaine equalled or exceeded 400 grams in weight, or if adulterated, that the cocaine *and* the adulterants or dilutants in the aggregate equalled or exceeded 400 grams in weight.

The State proffered substantial evidence that Giddings contracted to possess three kilograms of cocaine. We have evaluated all of the evidence in the light most favorable to the prosecution. The evidence is sufficient to permit any rational trier of fact to find Giddings attempted to possess 400 grams or more of cocaine. We overrule Giddings's second point of error.

## THE INDICTMENT

In his third and fourth points of error, Giddings complains that the trial court erred in overruling his motion to quash the indictment because (1) it failed to allege the manner and means by which the offense was allegedly committed and (2) it failed to allege facts constituting an offense.

■ Omitting the formal parts, the indictment alleges that Giddings did:

knowingly and intentionally, with the specific intent to commit an offense, possession of a controlled substance, to wit: COCAINE, in an amount by aggregate weight including any adulterants or dilutants of 400 grams or more, do acts, to wit: met with H. Lozano and displayed United States Currency for the purchase of 400 grams or more of COCAINE and was present at the location where the possession was to take place, which acts amounted to more than mere preparation which tended, but failed to effect the commission of the offense intended.

An indictment that tracks the statute is generally sufficient. *Lewis v. State,* 659 S.W.2d 429, 431 (Tex.Crim.App.1983); *Blackmon v. State,* 786 S.W.2d 467, 469 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). However, if it is the manner and means by which an act is done that makes an otherwise innocent act a criminal offense, it is necessary to allege facts showing the manner and means which makes the act a criminal offense. *Posey v. State,* 545 S.W.2d 162, 163 (Tex.Crim.App.1977). This is not the case here.

■ It is a violation of the Controlled Substances Act to intentionally possess cocaine without a valid prescription or order of a practitioner acting in the course of professional practice. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (Vernon 1991). As noted above, it is a criminal violation to perform an act, which amounts to more than mere preparation, with the specific intent to commit the offense of possession of cocaine even though the offense is not completed. TEX. PENAL CODE ANN. § 15.01 (Vernon 1974). The State was not required to allege facts showing the manner and means of this offense because the attempt to possess the cocaine under the alleged facts was not an innocent act. *Posey,* 545 S.W.2d at 163. The indictment tracks the statute and is sufficient for the State to charge a criminal offense. Tex. Health & Safety Code Ann. § 481.115(a) (Vernon 1991); TEX. PENAL CODE ANN. § 15.01 (Vernon 1974); *See Posey,* 545 S.W.2d at 164.

■ Giddings also argues that facts were not alleged in the indictment which would prove that his acts went beyond mere preparation to commit an offense. We note that the indictment must state facts which, if true, show a violation of the law. *Posey,* 545 S.W.2d at 163; *State v. Williams,* 780 S.W.2d 891, 894 (Tex.App.—

San Antonio 1989 no pet.). However, an indictment need not allege the phrase "amounting to more than mere preparation that tends but fails to effect the commission of the offense intended" if it alleges facts which show acts of that character. *See Ex parte Campbell,* 645 S.W.2d 313, 314 (Tex.Crim.App.1983); *Morrison v. State,* 625 S.W.2d 729, 730 (Tex.Crim.App. 1981). Here, the State alleged both.

The indictment alleged facts which constituted an offense. *Posey,* 545 S.W.2d at 163. We overrule Giddings's third and fourth points of error.

The trial court's judgment is AFFIRMED.

BAKER, J., dissents.

BAKER, Justice, dissenting.

I respectfully dissent. The evidence is insufficient for a conviction of attempted possession of cocaine. The State alleged the aggravating element of possession of 400 grams or more of cocaine including adulterants and dilutants. The State did not prove the aggravating element.

To sustain a conviction for an attempt crime, a person must commit an act amounting to more than mere preparation. The act must tend but fail to effect the commission of the offense intended. *See* TEX. PENAL CODE ANN. § 15.01(a) (Vernon 1974). The State may aggravate an attempt charge. The aggravating element must accompany the attempt. *See* TEX. PENAL CODE ANN. § 15.01(b) (Vernon Supp. 1990). The amount of cocaine alleged in the indictment is a crucial element of the State's case. This amount determines the potential punishment range. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (Vernon 1991).

The aggravating circumstance is possession of 400 or more grams of cocaine. The State must prove the amount of controlled substance including adulterants and dilutants seized in a "buy/bust" operation. *See Reeves v. State,* 806 S.W.2d 540, 543 (Tex.Crim.App.1990). The State must prove the existence of adulterants and dilu-

tants. Once proven, their weight may be added to the controlled substance. The amount of this combination aggravates the charge. *See Reeves,* 806 S.W.2d at 542–543; *McGlothlin v. State,* 749 S.W.2d 856, 861 (Tex.Crim.App.1988). The amount seized must equal at least the amount alleged in the charge. *See Reeves,* 806 S.W.2d at 544; *Sloan v. State,* 750 S.W.2d 788, 789 (Tex.Crim.App.1988); *McGlothlin,* 749 S.W.2d at 861.

This case is not a "bust/buy" operation. This case is a "reverse sting" operation. These are operations in which the police act as drug sellers. The State must prove each specific element of the crime alleged. *Wright v. State,* 603 S.W.2d 838, 840 (Tex. Crim.App.1980). The State must prove the accused had specific intent to possess the amount of the controlled substance alleged in the indictment.

After analyzing *Reeves,* the majority holds the evidence sufficient to permit the court to find that appellant attempted to possess 400 grams or more of cocaine. I cannot agree.

The State introduced evidence appellant requested four kilos of cocaine. There is no evidence about the amount of adulterants and dilutants in the four kilos. Because of the State's allegations in the indictment, *Reeves* requires testimony that adulterants or dilutants were added to increase the bulk of the final product. *See Reeves,* 806 S.W.2d at 543–545. There is no evidence to prove the aggravating element.

The Penal Code provides an alternative where a "reverse sting" is involved. This alternative is a charge of illegal investment. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.126 (Vernon Supp.1991). The State could have proven an illegal investment charge. Appellant requested cocaine and displayed money for an exchange. An illegal investment charge does not require proof of a specific amount of a controlled substance. It only requires proof that a defendant intended to invest money in an illegal enterprise. TEX. HEALTH & SAFETY CODE ANN. § 481.126(a) (Vernon Supp.1991).

I would reverse and enter a judgment of acquittal.