William Wayne **HICKMAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–91–00240–CR.

Court of Appeals of Texas, Houston (1st Dist.).

July 23, 1992.

Rehearing Denied Aug. 13, 1992.

Discretionary Review Refused Nov. 25, 1992.

245

Judy P. Mingledorff, Houston, for appellant.

John B. Holmes, Jr., Andrea F. Lopes, Di Glaeser, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and PRICE[1], JJ.

## OPINION

MIRABAL, Justice.

A jury found appellant, William Wayne Hickman, guilty of possession of at least 400 grams of methamphetamine, including adulterants and dilutants. The trial court assessed punishment at 25–years confinement. We reverse and remand.

■ In his first point of error, appellant asserts the evidence was insufficient to prove he possessed at least 400 grams of methamphetamine, including adulterants and dilutants.

In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). The entire body of evidence is reviewed to determine whether the State has proven beyond a reasonable doubt each and every element of the alleged crime and not just a plausible explanation of the crime. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989).

On February 16, 1990, the police executed a search and arrest warrant for Paul Nickens, his residence, and outbuildings. Appellant was visiting with Nickens when the police arrived. He was observed holding a glass jar of brown liquid, looking through and examining the liquid or the amount of crystal substance in the bottom.

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

The room where the police found Nickens and appellant was a laboratory used to manufacture methamphetamine. Two containers of powder and 13 jars of liquid were analyzed by a chemist at the Houston Police Crime Lab. The jars contained amounts of methamphetamine, reaction mixtures, by-products, starting material, and solvents used to assist in the reaction.

The State's chemist testified in part as follows. The jar held by appellant was not marked and separately tested; it was tested with three other jars containing liquid of similar quality.

[By Prosecutor]: What were the results of the contents of the four jars that were just discussed?

A: Each of these four jars gave positive tests for methamphetamine, and the sum total of those jars was analyzed for the amount of methamphetamine pure held within all of that liquid. The total liquid within those jars was almost six milliliters, almost six liters. The total methamphetamine was only 31 grams. Approximately 31 grams.

Q: And were there other containers in which you analyzed the substance and found more methamphetamine?

A: Yes, ma'am.

....

Q: And what was your opinion of how much methamphetamine was in those jars?

A: The three plastic gallon jugs which held kind of a brown liquid held a total of pure methamphetamine of approximately 78.3 grams when analyzed out. There was a quart jar which held both brown liquid and chunks of gray metal which would be in a reaction jar, which held methamphetamine and phenol acetone, which is a reaction mixture, and that one held approximately 98.5 grams of pure methamphetamine. And I had one other jar, a very small jar, which held a small amount of brown liquid that turned out to have approximately 3.2 grams of pure methamphetamine in it.

Q: You've discussed the amounts of pure methamphetamine. If you could, please include in your figures any adulterants and dilutants that are also included within the methamphetamine?

A: Yes, ma'am. In the three plastic gallon jars that were there, there were numerous adulterants within there from the reaction mixtures. These are by-products and starting material from the actual reaction as well as solvents used to assist in the reaction.

The total weight of the liquid within those three jugs was approximately 9,787 grams of liquid. In the quart jar which had the reaction mixture in it, there was approximately 210 grams of liquid on top of the metal which I decanted off and weighed on its own.

Q: And of those four jars, which I showed the photograph that contained the red substance, approximately how many grams were in each one of those jars including adulterants and dilutants?

A: Since each of the jars seem to be roughly equivalent, that's why I grouped them together, each one seemed to be about the same coloration and they all had a very tiny amount of precipitation at the bottom, but not enough to be worth filtering out. Each one would probably have, there were four jars, they were roughly equivalent to somewhere just over eight grams a piece, on each jar.

Q: That's the pure methamphetamine?

A: Right.

Q: And if you included all the adulterants and dilutants?

A: I have a complete volume of each one and they average approximately 1500 milliliters liters [sic] a piece.

Q: Which is how many grams?

A: Which taken on a density, I could figure it out. But given a second, my best guess or my best estimate of that would be approximately 12 to 1300 per jar.

.....

A: The low weight for the smallest jar would have been approximately 940 grams.

Q: And that includes methamphetamine and any adulterants and dilutants?

**A: Right.**

■ Appellant was indicted for possession of methamphetamine. Under the charge of possession, the terms "adulterants" and "dilutants" refer specifically to compounds, substances, or solutions added to the controlled substance with the intent to increase the bulk or quantity of the final product. *Reeves v. State*, 806 S.W.2d 540, 542 (Tex.Crim.App.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991); *McGlothlin v. State*, 749 S.W.2d 856, 858–59 (Tex.Crim.App.1988). If the added substance changes the chemical activity of the controlled substance, it is not an adulterant or dilutant, even if it does increase the bulk or quantity of the product. *Cawthorn v. State*, No. 1170–90, — S.W.2d —, — slip op. at 2 (Tex.Crim. App., April 15, 1992) (not yet reported). Where the State attempts to obtain a conviction under the theory that the aggregate weight of the controlled substance, including adulterants or dilutants is over a certain weight, the State must first prove the existence of any adulterants or dilutants, i.e., compounds, substances, or solutions added to the controlled substance to increase the bulk or quantity of the final product. *Reeves*, 806 S.W.2d at 542. The State must then show that the controlled substance, plus any adulterants or dilutants, if proven to exist, weigh more than the certain weight. *Id.*

■ In *Cawthorn*, the Texas Court of Criminal Appeals adhered to and clarified its holdings in *McGlothlin, Reeves, Engelking v. State*, 750 S.W.2d 213 (Tex.Crim. App.1988), and *Sloan v. State*, 750 S.W.2d 788 (Tex.Crim.App.1988), with regard to what the State must prove when adulterants and dilutants constitute a portion of the weight utilized to increase punishment. The State must prove the following beyond a reasonable doubt: (1) the identity of the named illegal substance; (2) that the added remainder (adulterants and/or dilutants) has not affected the chemical activity of the named illegal substance; (3) that the remainder (adulterants and/or dilutants) was added to the named illegal substance to increase the bulk or quantity of the final product; (4) the weight of the illegal substance, including any adulterants and/or dilutants. *Cawthorn*, at — – —.

In this instance, there is no evidence to show the substances or solutions surrounding the pure methamphetamine in the jars were intended to increase the bulk or quantity of the final product. The State's chemist was not specifically asked to define adulterants and dilutants but did explain in his testimony, "[T]here were numerous adulterants within there from the reaction mixtures. These are by-products and starting material from the actual reaction as well as solvents used to assist in the reaction." We find the State failed to prove beyond a reasonable doubt the existence of adulterants and dilutants. Thus, the State may not include the weight of additional substances in the weight of the methamphetamine to increase punishment. Since the total amount of pure methamphetamine recovered from the lab was only 211 grams, the State failed to prove appellant guilty of possession of at least 400 grams of methamphetamine, including any adulterants and dilutants.

■ We sustain point of error one; it is therefore unnecessary to address appellant's remaining two points of error, and we decline to do so. We must next address the disposition of this appeal.

In this instance, the charge to the jury included options to find appellant guilty of possession of methamphetamine including any adulterants or dilutants weighing: (1) at least 400 grams by aggregate weight; (2) 28 grams or more but less than 400 grams by aggregate weight; (3) less than 28 grams by aggregate weight; or (4) not guilty.

In *State v. Engelking*, 817 S.W.2d 64 (Tex.Crim.App.1991), the Texas Court of Criminal Appeals reserved again the question reserved in *Stephens v. State*, 806 S.W.2d 812, 814, n. 4 (Tex.Crim.App.1990): Whether, when a conviction is reversed for insufficient evidence, double jeopardy would attach to re-prosecution of a lesser included offense if "the jury charge had included an instruction on the lesser included offense or if the trial court had errone-

ously refused the State's request for a lesser included offense instruction." *Engelking,* 817 S.W.2d at 67.

In this instance, the jury charge included instructions on the lesser included offense, and the evidence is sufficient to support conviction of a lesser included offense. For this reason, we reverse the judgment and remand this cause to the trial court.