IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00194-CR

 

Kareem Germann Erskine,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 40th District Court

Ellis County, Texas

Trial Court No. 28655CR

 



Opinion



 








          A jury convicted Kareem Germann Erskine
of possession of cocaine in the amount of 4 grams or more but less than 200
grams with intent to deliver and assessed his punishment at eighteen years’
imprisonment.  Erskine contends in two points that: (1) the evidence is legally
insufficient because the State failed to establish how much of the substance at
issue was actually cocaine; and (2) the evidence is factually insufficient to
prove (a) how much of the substance at issue was actually cocaine or (b) that
he had the requisite intent to deliver the substance.  We will affirm.

 

Factual Background

          Officer Jason Chapman stopped the car
Erskine was driving for playing loud music in violation of a Waxahachie
municipal ordinance.  When Chapman turned on the overhead lights of his patrol
car, Erskine pulled the car into a driveway.  Erskine “quickly exited” the car,
went to the front corner of the car “somewhere between the tire and the front
bumper, leaned down real quick, and stood back up and waited there.”  Chapman
detected a strong odor of burning marihuana as he approached Erskine.  Erskine
explained that he had just been in an argument with his girlfriend and had
smoked some marihuana in the car.

          During a search of the car, Erskine
found marihuana seeds in the front seat, a money bag in the glove compartment
containing $1,013.00 in currency, and a shoebox in the trunk containing $125.00
in rolled coins.  Another officer found a clear plastic baggy lying on the
ground right near the tire where Erskine had leaned over.  The baggy contained
numerous rocks of cocaine which were wrapped individually in smaller plastic
bags.

          A DPS lab analyst testified that the
net weight of the rocks was 5.06 grams and that they contained cocaine.

          Erskine called his girlfriend Selene
Duty to testify on his behalf.  Duty testified that the car Erskine was driving
was hers.  She stated that the currency in the glove compartment belonged to
her and was the portion of her income tax refund which she had not yet spent. 
Erskine offered in evidence a statement indicating that Duty had received a tax
refund of $3,788.  Duty testified that she had been saving the coins found in
the trunk as a gift for her grandbaby.

 

Standards of Review

          When reviewing a legal insufficiency
complaint, we consider all the evidence in the record and ask “whether, after
viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.”  Moff v. State, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004) (quoting Jackson v. Va., 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)).   

          When reviewing a factually
insufficiency complaint, we ask whether the evidence supporting the verdict is
“too weak to support the finding of guilt beyond a reasonable doubt” or whether
the contrary evidence is so strong “that the beyond-a-reasonable-doubt standard
could not have been met.”  See Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004).

          For both legal and factual[1]
insufficiency challenges, we review the evidence against “the hypothetically
correct jury charge for the case.”  Fuller v. State, 73 S.W.3d 250, 252
(Tex. Crim. App. 2002) (quoting Gollihar v. State, 46 S.W.3d 243, 253
(Tex. Crim. App. 2001) (quoting Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997))).  The hypothetically correct jury charge is authorized
by the indictment or information and “encompasses [the] statutory elements of
the offense.”  See Gharbi v. State, 131 S.W.3d 481, 482-83 (Tex. Crim. App.
2003) (quoting Fuller, 73 S.W.3d at 254); see also Gollihar, 46
S.W.3d at 254-55; Malik, 953 S.W.2d at 240.

 

Statutory Definitions

          Erskine places primary reliance on Reeves
v. State, in which the Court of Criminal Appeals held that the evidence was
legally insufficient to sustain a conviction for delivery of amphetamine in the
amount of 28 grams or more but less than 400 grams.  806 S.W.2d 540, 543-45
(Tex. Crim. App. 1990).  As we will explain however, Reeves has been
effectively overruled by statutory amendments and by the adoption of the
hypothetically correct jury charge as the standard for reviewing legal and
factual insufficiency complaints.

          As in Erskine’s case, the indictment in
Reeves did not allege that the aggregate weight of the substance at
issue included adulterants and dilutants.  Id. at 543.  The State’s
expert testified that the substance tested had an aggregate weight of 29.76
grams and contained amphetamine.  Id. at 543-44.  The Court concluded
that the evidence was legally insufficient to prove that the defendant
delivered 28 grams or more of amphetamine because: (1) the State’s expert could
not quantify the precise amount of amphetamine in the substance tested; and (2)
the State did not present evidence that the other substances combined with the
amphetamine were “intended to increase the bulk or quantity of the final
product, amphetamine.”  Id. at 544-45 (citing McGlothlin v. State,
749 S.W.2d 856, 861 (Tex. Crim. App. 1988)) (other citations omitted).

          Although the facts of Reeves
are similar to those in Erskine’s case, the underlying statutory definitions
have changed.  The version of the Texas Controlled Substances Act applicable in
Reeves defined a “controlled substance” as follows:




                   “Controlled substance” means
a drug, substance, or immediate precursor listed in Schedules I through V and
Penalty Groups 1 through 4 of this Act.

 

Act of May 25, 1985, 69th Leg., R.S., ch. 227, §
1, 1985 Tex. Gen. Laws 1102, 1103 (amended 1987) (current version at Tex. Health & Safety Code Ann. § 481.002(5)
(Vernon Supp. 2005)).  The Legislature carried a similar definition forward
when it enacted the Health and Safety Code in 1989.  See Act of May 18,
1989, 71st Leg., R.S., ch. 678, § 1, sec. 481.002(5), 1989 Tex. Gen. Laws 2230,
2904 (amended 1997).[2]

          The current definition provides as
follows:

                   “Controlled substance” means
a substance, including a drug, an adulterant, and a dilutant, listed in
Schedules I through V or Penalty Groups 1, 1-A, or 2 through 4.  The term
includes the aggregate weight of any mixture, solution, or other substance
containing a controlled substance.

 

Tex. Health &
Safety Code Ann. § 481.002(5).[3] 
Thus, the Health and Safety Code now expressly defines the term “controlled
substance” to include “adulterants” and “dilutants.”

          Because the terms “adulterants” and
“dilutants” were not defined under the former Texas Controlled Substances Act,
the Court of Criminal Appeals undertook to define them in McGlothlin.  See
749 S.W.2d at 857.  The Court concluded that a substance is an “adulterant” or
“dilutant” only if it is “intended to increase the bulk or quantity of the
final product.”  Id. at 861.  Now however, the Legislature has defined
the term “adulterant or dilutant” as “any material that increases the bulk or quantity of a
controlled substance, regardless of its effect on the chemical activity of the
controlled substance.”  Tex. Health
& Safety Code Ann. § 481.002(49) (Vernon Supp. 2005).

          The Court of Criminal Appeals has
recently concluded that this definition effectively overruled the McGlothlin
requirement “that the State prove intent to increase the bulk or quantity of
the controlled substance.”  See Seals v. State, No. PD-0678-04, 2005 WL
3058041, at *2-3 (Tex. Crim. App. Nov. 16, 2005).  Thus, “any substance that is
added to or mixed with a controlled substance, regardless of when, how, or why
that substance was added, may be added to the aggregate weight of the
controlled substance as an adulterant or dilutant.”  Id., 2005 WL
3058041, at *2; accord Melton v. State, 120 S.W.3d 339, 343 (Tex. Crim.
App. 2003).

          In light of these amendments, the
Court of Criminal Appeals has concluded:

          [T]he State is no longer required to
determine the amount of controlled substance and the amount of
adulterant and dilutant that constitute the mixture.  The State has to prove
only that the aggregate weight of the controlled substance mixture, including
adulterants and dilutants, equals the alleged minimum weight.

 

Melton,
120 S.W.3d at 344 (citations omitted); accord Lilly v. State, 119 S.W.3d
900, 903-05 (Tex. App.—Eastland 2003, pet. ref’d); Jackson v. State, 94
S.W.3d 46, 49 (Tex. App.—Tyler 2002, pet. ref’d); see also Norman
Silverman, Crime Labs: Scapegoats for a Culture of Indifference, 30 T. Marshall L. Rev. 429, 434 (2005).

Controlled Substance

          Erskine contends in his first point
that the evidence is legally insufficient because the State failed to establish
how much of the substance at issue was actually cocaine.  He contends in part
of his second point that the evidence is factually insufficient for the same
reason.  Although Erskine does not refer to Melton or similar cases, he
essentially contends that they do not apply here because neither the indictment
nor the charge refers to “adulterants or dilutants.”  Rather, Erskine contends
that, because the indictment and the charge solely refer to cocaine in the
amount of 4 grams or more but less than 200 grams, the State had to prove that
he possessed “only cocaine” in that amount to obtain a conviction.

          For our analysis, we must first define
the hypothetically correct jury charge.  The hypothetically correct jury charge
is authorized by the indictment and “encompasses [the] statutory elements of
the offense.”  See Gharbi, 131 S.W.3d at 482-83.  The elements for
possession of a controlled substance with intent to deliver are that the
defendant: (1) possessed a controlled substance in the amount alleged; (2)
intended to deliver the controlled substance to another; and (3) knew that the
substance in his possession was a controlled substance.  See Nhem v. State,
129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

          The indictment alleges that on the
date in question Erskine “did then and there knowingly possess, with intent to
deliver, a controlled substance, namely, cocaine,[4]
in an amount of four grams or more but less than 400 grams.”[5] 
The application paragraph of the charge tracked the language of the
indictment.  In addition, the charge defined the terms “possession,” “intentionally,”
and “knowingly.”

          However, the charge did not instruct
the jury regarding the offense of possession of a controlled substance with
intent to deliver.  Rather, the charge instructed the jury on the offense of
simple possession of a controlled substance.  In addition, the charge did not
define the terms “controlled substance” and “adulterant or dilutant.”[6]

          Nevertheless, a hypothetically correct
jury charge would have included these definitions and would have instructed the
jury on the offense charged.  See Lilly, 119 S.W.3d at 904-05.  Thus, a
hypothetically correct jury charge would have instructed the jury (with
appropriate statutory definitions) to convict Erskine if the jurors found
beyond a reasonable doubt that he possessed with intent to deliver cocaine in
the amount of “by aggregate weight, including adulterants or dilutants, four
grams or more but less than 200 grams.”  See Tex. Health & Safety Code Ann. § 481.112(d) (Vernon Supp. 2005).

          Here, a DPS lab analyst testified that
the net weight of the rocks seized from near Erskine’s car was 5.06 grams and
that they contained cocaine.  There is no other evidence in the record
regarding the weight or composition of the rocks.

          After viewing the evidence in the
light most favorable to the prosecution, we hold that a rational trier of fact
could have found beyond a reasonable doubt that Erskine possessed a controlled
substance in the amount of “by aggregate weight, including adulterants or
dilutants, 4 grams or more but less than 200 grams.”  See Melton, 120
S.W.3d at 344; Lilly, 119 S.W.3d at 903-05; Jackson, 94 S.W.3d at
49-50.  We likewise conclude that the evidence concerning the weight of the
controlled substance is not “too weak to support the finding of guilt beyond a
reasonable doubt.”  See Lilly, 119 S.W.3d at 903-05.

          Thus, the evidence is legally and
factually sufficient on this issue.  See Zuniga, 144 S.W.3d at 484; Moff,
131 S.W.3d at 488.  Accordingly, we overrule Erskine’s first point and that
part of his second point which challenges the factual sufficiency of the
evidence to prove the amount of the controlled substance at issue.

Intent to Deliver

          The remainder of Erskine’s second
point is directed to the factual sufficiency of the evidence to establish that
he possessed the cocaine with an intent to deliver it.

                   [I]ntent to deliver may be
inferred from the quantity of drugs possessed and from the manner in which they
are packaged.  Courts have considered several factors in determining such
intent, including the following: (1) the nature of the location where the
defendant was arrested; (2) the quantity of drugs the defendant possessed; (3)
the manner of packaging of the drugs; (4) the presence or absence of drug
paraphernalia (for use or sale); (5) whether the defendant possessed a large
amount of cash in addition to the drugs; and (6) the defendant’s status as a
drug user.  Expert testimony may be introduced to prove intent to deliver.

 

Guy v. State, 160 S.W.3d 606, 613-14 (Tex. App.—Fort Worth 2005, pet. ref’d)
(citations omitted); accord Reed v. State, 158 S.W.3d 44, 48-49 (Tex.
App.—Houston [14th Dist.] 2005, pet. ref’d).

          Here, Officer Chapman testified that
the neighborhood in which he arrested Erskine has “a high incidence of drugs
and drug usage.”  Chapman testified that the amount of rocks Erskine had was
more than a “typical user” would have and that the manner of their packaging
indicated that they were “packaged for delivery.”  Chapman recovered a large
amount of cash from the glove compartment of the car and noted that Erskine had
been smoking marihuana.

          Conversely, Erskine’s girlfriend Duty
testified that the cash was hers.  However, her testimony did not otherwise
controvert the State’s evidence on the issue of intent.

          The evidence here is similar to that
presented in Jordan v. State, 139 S.W.3d 723 (Tex. App.—Fort Worth 2004,
no pet.).  There,

          appellant was arrested in a high crime
area where drug houses were located.  While he did not possess any drug
paraphernalia indicating an intent to sell, he also did not possess any
indicating an intent to use.  Two officers testified that the packaging of the
drugs, in capsule form and in individual bags, indicated an intent to sell. 
Appellant possessed three different kinds of drugs.  Finally, an experienced
narcotics officer testified that the amount of drugs possessed by appellant
indicated an intent to sell.

 

Id.
at 726-27.  Under these facts, the Fort Worth Court found the evidence legally
and factually sufficient to prove the appellant possessed the substance at
issue with an intent to deliver.  See id.

          Although Duty claimed ownership of the
cash, the jury was free to disregard her testimony.  See Goodman v. State,
66 S.W.3d 283, 287 (Tex. Crim. App. 2001); Parker v. State, 119 S.W.3d 350,
355 (Tex. App.—Waco 2003, pet. ref’d).  Therefore, we cannot say that the
evidence supporting the verdict is “too weak to support the finding of guilt
beyond a reasonable doubt” or that Duty’s testimony is so strong “that the
beyond-a-reasonable-doubt standard could not have been met.”  See Zuniga,
144 S.W.3d at 484-85.  Accordingly, the evidence is factually sufficient to
prove that Erskine possessed the cocaine with an intent to deliver it.  Thus,
we overrule the remainder of Erskine’s second point.




We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed March 29, 2006

Publish

[CR25]









[1]
          Although the decisions of the
Court of Criminal Appeals regarding the hypothetically correct jury charge all
address legal insufficiency, lower courts have consistently applied this
analysis to factual insufficiency complaints as well.  See, e.g.,
Gearhart v. State, 122 S.W.3d 459, 466 (Tex. App.—Corpus Christi 2003,
pet. ref’d); Villani v. State, 116 S.W.3d 297, 307 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d).





[2]
          The original source for this and
other definitions currently in the Texas Health and Safety Code is the Uniform
Controlled Substances Act.  The Uniform Act currently defines a “controlled
substance” as follows:

 

                        “Controlled
substance” means a drug, substance, or immediate precursor, included in
Schedules I through V of [Article] 2.

 

Unif.
Controlled Substances Act § 101(2)
(1997).

 





[3]
          The current version was enacted
by the 77th Legislature in 2001.  See Act of May 22, 2001, 77th Leg.,
R.S., ch. 1188, § 1, 2001 Tex. Gen. Laws 2691, 2691.





[4]
          Because section 481.002(5) now
defines a “controlled substance” to be any listed substance “including”
adulterants and dilutants and because the term expressly “includes the
aggregate weight of any mixture, solution, or other substance containing a
controlled substance,” it is arguably unnecessary to include allegations
regarding “aggregate weight” or the presence of adulterants or dilutants in an
indictment.  See Tex. Health
& Safety Code Ann. § 481.002(5) (Vernon Supp. 2005).  Nevertheless,
the better practice may be to include such allegations.  See, e.g.,
Lopez v. State, 108 S.W.3d 293, 295 (Tex. Crim. App. 2003); Beller v.
State, 154 S.W.3d 836, 838 (Tex. App.—Houston [14th Dist.] 2005, pet.
ref’d).

 





[5]
          Based on the evidence, we
presume that the State intended to charge Erskine with the 1st degree felony
offense of possession with intent to deliver 4 grams or more but less than 200
grams.  See Tex. Health &
Safety Code Ann. § 481.112(d) (Vernon 2003).  Section 481.112(e)
provides for an increased punishment range (minimum 10 years’ imprisonment,
maximum fine of $100,000) when the amount of the controlled substance is 200
grams or more but less than 400 grams.  Id. § 481.112(e) (Vernon 2003).





[6]
          Because of these omitted
definitions and because of the failure to instruct the jury regarding the
offense alleged in the indictment, the charge was erroneous.  See Ester v.
State, 151 S.W.3d 660, 664 (Tex. App.—Waco 2004, no pet.).  However,
Erskine does not complain about these errors in his brief.