Guadalupe "Wally" RIVAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–89–490–CR.

Court of Appeals of Texas,
Corpus Christi.

April 5, 1990.

Discretionary Review Refused
June 27, 1990.

Juan Martinez Gonzales, Beeville, for appellant.

C.F. Moore, Dist. Atty., Beeville, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant, Guadalupe "Wally" Rivas, guilty of attempted possession of 400 grams or more of cocaine and assessed punishment at sixty-nine years in the Texas Department of Corrections. By five points of error, appellant asserts that the trial court erred by not quashing the indictment and that the evidence was insufficient to sustain a conviction of attempted possession of cocaine. We affirm the judgment of the trial court.

By his first point of error, appellant asserts that the trial court erred by failing to quash the indictment because it did not allege all the essential acts or omissions of the crime. Appellant argues that the indictment was insufficient to inform him of his alleged crime of illegal investment as stated in Tex.Rev.Civ.Stat.Ann.. art. 4476–15 § 4.052 (Vernon 1989) (repealed). *See* Tex. Health and Safety Code Ann. § 481.126(a)(2) (Vernon 1990); Texas Controlled Substances Act, ch. 429, 1973 Tex. Gen.Laws 1132, *repealed by*, Acts 1989, ch. 678, § 13(1), 1989 Tex.Gen.Laws 2230, 3165. Furthermore, by his fourth point of error, appellant asserts that the trial court erred by not quashing the indictment because the illegal investment statute is void

for vagueness. *See* Tex. Health and Safety Code Ann. § 481.126(a)(2) (Vernon 1990); Texas Controlled Substances Act, ch. 429, 1973 Tex.Gen.Laws 1132, *repealed by*, Acts 1989, ch. 678, § 13(1), 1989 Tex.Gen.Laws 2230, 3165. We disagree with both assertions. Appellant was indicted and convicted for attempted possession and not attempted investment.

The relevant portion of the indictment provides:

[appellant], did then and there, unlawfully, intentionally, and knowingly, with *intent to commit the offense of possession of cocaine* in the amount of 400 grams or more, do an act, to wit: offer to purchase from Louis Laurel and Robert Longoria 2000 grams of a controlled substance, to-wit: cocaine for $25,000.00 in lawful money of the United States of America, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended. (emphasis added).

The terms of Tex.Rev.Civ.Stat.Ann. art. 4476–15 § 4.04 (Vernon Supp.1989) (repealed), entitled "Offense: Possession of Substance in Penalty Group I," which is now codified in Texas Health and Safety Code Ann. § 481.115 (Vernon 1990) provide that "[a] person commits an offense if that person knowingly or intentionally possesses a controlled substance listed in Penalty Group I, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice." *See* Tex. Health and Safety Code Ann. § 481.115(a) (Vernon 1990); Texas Controlled Substances Act, ch. 429, 1973 Tex. Gen.Laws 1132, 1154, *repealed by*, Acts 1989, ch. 678, § 13(1), 1989 Tex.Gen.Laws 2230, 3165. Furthermore, the indictment clearly tracks the language required to properly allege a criminal attempt to possess cocaine. *See* Tex.Penal Code § 15.01(a) (Vernon Supp.1990); Tex. Health and Safety Code Ann. § 481.115(a) (Vernon 1990). As such, the indictment clearly apprised appellant of the offense for which he was indicted and convicted. Appellant's first and fourth points of error are overruled.

■ By his second point of error, appellant asserts that the trial court erred by not quashing the second count of the indictment, which alleged the offense of illegal investment in cocaine, because the terms "finance," "invest," and "funds" were vague, multifarious, and subject to various meanings. Additionally, by his third point of error, appellant asserts that the trial court erred by not quashing the third count of the indictment, alleging attempted illegal investment in cocaine, because the term "offer to finance" is vague, multifarious, and subject to various meanings. Appellant fails to show how the two denials to quash the indictment harmed him when the jury did not convict him of either alleged offense. In actuality, the jury's decision to convict appellant on the attempted possession of cocaine charge amounted to a de facto acquittal of the other alleged offenses. *See Crocker v. State,* 573 S.W.2d 190, 205 (Tex.Crim.App.1978). Appellant's second and third points of error are overruled.

By his fifth point of error, appellant asserts that the evidence was insufficient to sustain a conviction for attempted cocaine possession. Appellant asserts that the State failed to affirmatively link him to the cocaine purchase and points to the police officers' testimonies which show that he did not see or otherwise physically come into contact with the cocaine Arguijo tried to purchase. Furthermore, appellant argues that the fact that he did not communicate with the two undercover officers or Brown or Arguijo during the entire encounter proves that he was merely present at the scene and not guilty of any crime.

■ In reviewing the sufficiency of the evidence, the appellate court must look at all the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Marroquin v. State,* 746 S.W.2d 747, 750 (Tex. Crim.App.1988); *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App.1984); *Ar-*

*guijo v. State,* 738 S.W.2d 367, 369 (Tex. App.—Corpus Christi 1987, no pet.); *Rosamond v. State,* 730 S.W.2d 147, 149 (Tex. App.—Corpus Christi 1987, no pet.). In a circumstantial evidence case, it is not necessary that every fact point directly and independently to the defendant's guilt; rather, it is enough if the jury's conclusion is warranted by the combined and cumulative force of all incriminating circumstances. *Russell v. State,* 665 S.W.2d 771, 776 (Tex.Crim.App.1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984); *Ramos v. State,* 767 S.W.2d 248, 249 (Tex. App.—Corpus Christi 1989, pet. ref'd). Every circumstantial evidence case must be tested by its own facts to determine whether the evidence is sufficient to support a conviction. *Johnson v. State,* 673 S.W.2d 190, 195 (Tex.Crim.App.1984); *Taylor v. State,* 654 S.W.2d 753, 760 (Tex.App.—Corpus Christi 1983, pet. ref'd); *see also, Smith v. State,* 754 S.W.2d 414, 415 (Tex. App.—Corpus Christi 1988, no pet.); *Nieto v. State,* 767 S.W.2d 905, 908 (Tex.App.—Corpus Christi 1989, no pet.).

The evidence shows that a drug law enforcement investigation focused upon the alleged drug trafficking of the Arguijo family. Appellant was married to one of the Arguijo daughters. Confidential informant Charles Brown assisted undercover narcotics police officers Luis Laurel and Robert Longoria in negotiating the sale of a large amount of cocaine to the family in a "reverse-sting" operation. Brown and Laurel acted as the brokers for the sale while Longoria acted as the cocaine vendor. All conversations between the officers and Arguijo were recorded through a hidden microphone or "body wire" worn by Laurel.

On the date of the offense, Brown contacted Jimmy Lee Arguijo to negotiate a cocaine sale. After several telephone conversations, Arguijo agreed to meet Brown, Laurel, and Longoria at Brown's automotive repair garage to inspect their merchandise. Arguijo arrived at the garage alone, driving a beige Lincoln Town Car automobile. The officers showed Arguijo two kilograms of cocaine and indicated that they had two additional kilograms for sale. Ar-

guijo then left the garage. The officers and Arguijo subsequently negotiated a deal through a series of telephone calls to and from Arguijo's family home and Brown's garage, ultimately agreeing to a sale of four kilograms of cocaine for $45,000.00.

A few minutes later, Arguijo returned to the garage, driving the beige automobile and accompanied by appellant. Both men got out of the car, but only Arguijo entered the garage and approached the undercover officers. Appellant remained by the car. When one of the officers asked the identity of this companion, Arguijo replied, "He's my brother-in-law. He's okay."

Arguijo resumed negotiations by telling the three men that he had something to show them. Walking to the rear of the Lincoln, Arguijo opened the trunk. He then opened a paper sack found inside the trunk and displayed a plastic bag filled with money, saying, "Look what I got. I'm not here to play around." During this exchange, appellant stood sufficiently close to the opened trunk to see and hear Arguijo but did not touch the money. Arguijo then closed the trunk and said to the officers, "Let me see the rest of the stuff," referring to the two uninspected kilograms of cocaine. Then the officers and Arguijo re-entered the garage to resume negotiations.

Appellant remained near the Lincoln automobile, pacing around, looking in different directions and observing the street traffic. Officer Laurel testified that appellant seemed to be "on the lookout." Officer Longoria testified that it was not unusual for people negotiating a drug purchase, the principals, to be accompanied by other persons serving as bodyguards and scouts to prevent an arrest or defend an attack.

Arguijo and the officers re-negotiated a lesser sale of only two kilograms of cocaine for $25,000.00. The officers arrested both Arguijo and appellant after Arguijo went back to the car and retrieved the money. At no time before his arrest did appellant communicate with the officers or Arguijo. Appellant did not offer to purchase any cocaine from the officers. Appellant never

entered the garage nor did he see, touch or use any of the cocaine for sale. The officers did not establish a conversation with appellant until after his arrest. A search of the Town Car revealed several small packets of a controlled substance and registration papers indicating that appellant's wife owned the car.

 In order to convict appellant of attempted possession of cocaine, the State had to prove, beyond a reasonable doubt, that appellant specifically intended to possess the cocaine and performed an act amounting to more than mere preparation in order to obtain dominion and control over the illegal substance which tended but failed to effect the commission of possession of cocaine. *See Flournoy v. State,* 668 S.W.2d 380, 382 (Tex.Crim.App.1984); *Perez v. State,* 695 S.W.2d 51, 52 (Tex.App. —Corpus Christi 1985, no pet.); Tex.Penal Code Ann. § 15.01 (Vernon Supp.1990). An "imaginary line" separates mere preparatory conduct which is usually noncriminal, from an act which tends to effect the commission of an offense which is always criminal conduct. *Flournoy,* 668 S.W.2d at 383; *McCravy v. State,* 642 S.W.2d 450, 460 (Tex.Crim.App.1982); *Sorce v. State,* 736 S.W.2d 851, 857 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). Where the imaginary line is to be drawn depends upon the nature of the crime attempted and must be considered on a case-by-case basis. *Gibbons v. State,* 634 S.W.2d 700, 707 (Tex. Crim.App.1982); *Sorce,* 736 S.W.2d at 857.

While appellant's mere presence at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt which, combined with other facts, may show that the accused was a participant in the drug purchase. *See Thomas v. State,* 645 S.W.2d 798, 800 (Tex.Crim.App.1983); *Johnson v. State,* 537 S.W.2d 16, 18 (Tex. Crim.App.1976). In the present case, it is undisputed that appellant accompanied his brother-in-law to the scene of a drug purchase. The car used in the transaction belonged to appellant's wife. Appellant heard and saw Arguijo open the car trunk, display the money to the officers and ask to see the "other stuff." Appellant's close proximity to the automobile and his examination of the street activity is consistent with the conduct of a scout or bodyguard.

Each of the foregoing circumstances was of some probative value, and when considered together (especially appellant's witnessing of a portion of the purchase negotiations at the automobile), we find them sufficient to support the conviction. We find that a rational trier of fact could have found beyond a reasonable doubt that appellant specifically intended to help Arguijo purchase the cocaine. Appellant's fifth point of error is overruled. The judgment of the trial court is AFFIRMED.