**Opinion issued June 16, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

**NO. 01-25-00105-CR**

———————————————

**RODNEY WAYNE GRAY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case No. 1587483**

**MEMORANDUM OPINION**

Rodney Wayne Gray pled guilty to possession of a controlled substance and was placed on deferred-adjudication community supervision. The State subsequently filed a motion to adjudicate Gray's guilt, alleging violations of the terms of his community supervision. After an evidentiary hearing, the trial court

found true the allegation that Gray violated his community supervision by committing the offense of unlawful carrying of a weapon under Texas Penal Code Section 46.02. The trial court adjudicated Gray guilty and sentenced him to eight years' imprisonment.

In his sole issue on appeal, Gray argues the evidence is insufficient to support the trial court's finding that he committed the unlawful-carrying offense and, therefore, the court abused its discretion in adjudicating his guilt.

Viewing the record in the light most favorable to the ruling, as we are instructed to do, we conclude that the State proved by a preponderance of the evidence that Gray violated a condition of his community supervision by committing the offense of unlawful carrying of a weapon. The trial court therefore did not abuse its discretion in adjudicating guilt. We affirm the trial court's judgment.

## BACKGROUND

### A.    While he was on community supervision, Gray was arrested.

In 2018, Gray pled guilty to possession of methamphetamine (4–200 grams). *See* TEX. HEALTH & SAFETY CODE §§ 481.102(6), 481.115(a), (d). The trial court deferred adjudication and placed Gray on community supervision for five years with standard conditions, including the requirement that Gray "[c]ommit no offense

against the laws of this or any other State or of the United States."[1] In 2023, Gray's term of supervision was extended for one year with a new expiration date of August 2024.

Gray was arrested in February 2024 after police officers responded to an alert for a stolen vehicle and located it in a bar parking lot. After observing Gray and a companion, Charity Whitmore, return to the vehicle and begin to drive, officers conducted a felony stop and arrested Gray and Whitmore. Officers conducted a search of the vehicle and found a handgun along with a bag that contained the following:

- a substance that the arresting officer testified he believed to be methamphetamine packaged in small baggies;

- empty small baggies;

- a scale;

- cash; and

- a debit card with Gray's name on it.

**B.    The State moved to adjudicate guilt, and the trial court held a hearing on the State's motion.**

Following Gray's arrest, the State filed a motion to adjudicate guilt alleging three violations of the terms of Gray's community supervision, each based on the commission of a new offense. Specifically, the State alleged that Gray committed

---

[1]    Additionally, Gray was not to "ship, transport, possess, receive, or purchase a firearm" as a condition of community supervision.

the new offenses of (1) unlawfully carrying a weapon, Texas Penal Code Section 46.02(a-1); (2) unauthorized use of a vehicle, Texas Penal Code Section 31.07; and (3) possession with intent to deliver a controlled substance, Texas Health & Safety Code Section 481.112.

Proof of only a single violation is required to adjudicate guilt. *See Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009); *Bell v. State*, 649 S.W.3d 867, 898 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd).

During the hearing on the State's motion to adjudicate, arresting officer, C. Seidel, testified that officers found a car that had been reported stolen, called the owner of the vehicle to confirm it had been stolen, and "waited and watched" it for about two hours.[2] Seidel explained that the officers observed two individuals, identified as Gray and Whitmore, walk back and forth between the car and the bar multiple times. Eventually, Gray entered the driver's seat and began to drive. Officers then conducted a felony stop and took Gray and Whitmore into custody.

Seidel testified that the officers searched the vehicle and found a handgun in a holster between the driver's seat and the middle console. He testified they also found a bag under the driver's seat that contained what he recognized to be "crystal methamphetamine" packaged in small baggies, empty small baggies, a scale, cash,

---

[2] The owner of the vehicle did not appear or testify. But one of Gray's witnesses, Ruben Maldonado, testified that he gave Gray the key and permission to drive the vehicle.

and a debit card with Gray's name on it. Seidel further testified that the circumstances were consistent with Gray selling narcotics, including: Gray walking to and from the car, the small packaging of the narcotics, the cash, and the scale.

The State introduced Officer Seidel's body-camera footage, which was consistent with his testimony. The video shows officers searching the vehicle and finding a handgun and a bag containing alleged methamphetamine packaged in small baggies, additional empty baggies, a scale, cash, and debit card.

In the recording, Gray admitted to Officer Seidel that the gun was his and that he knew drugs were in the car. He denied the drugs were his and denied knowing the car was stolen.

Gray and Whitmore also testified at the hearing. Gray admitted that he knew the car contained a gun and methamphetamine. Gray stated Whitmore found "some stuff that she was sure was methamphetamine." Gray testified, however, that the gun belonged to Whitmore and that he lied to officers when he initially told them the gun belonged to him. Whitmore testified the gun belonged to her.

As discussed in greater detail below, the trial court found it "true" that Gray violated his community supervision by committing the offense of unlawful carrying of a weapon. The trial court found "not true" as to unauthorized use of a vehicle, and the trial court declined to enter a "true" or "not true" finding as to possession with intent to deliver a controlled substance (stating that it was "not proven").

The trial court adjudicated Gray guilty on the original drug case and sentenced him to eight years' imprisonment. Gray appealed.

## DISCUSSION

In his sole issue on appeal, Gray contends the evidence is insufficient to support the adjudication of his guilt based on the unlawful carrying of a weapon offense. We disagree and affirm.

### A. Standard of Review

A trial court's decision to adjudicate guilt after deferred adjudication is reviewed for an abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). In determining whether the trial court abused its discretion, we review the evidence in the light most favorable to the trial court's decision. *See Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); *Bell*, 649 S.W.3d at 898. The trial court is the sole judge of the witnesses' credibility and the weight to give the evidence. *Hacker*, 389 S.W.3d at 865.

On a motion to adjudicate guilt (unlike in other criminal contexts), the State has the burden to prove a defendant violated a condition of community supervision by a preponderance of the evidence. *Rickels*, 202 S.W.3d at 763–64. The State satisfies this burden when the greater weight of credible evidence before the trial

court creates a reasonable belief that it is more probable than not that the defendant has violated a condition of community supervision. *See id.*; *Black v. State*, 411 S.W.3d 25, 28 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In other words, in the case of a new law violation for purposes of revocation of community supervision (and adjudicating guilt), as was alleged here, "proof of a final conviction [on the new violation] is not necessary so long as the State proves by a preponderance of the evidence that the new law violation was committed." *Medina v. State*, 555 S.W.3d 581, 590 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

As explained above, proof of a single violation of a community-supervision condition is sufficient to support revocation. *See Smith*, 286 S.W.3d at 342; *Bell*, 649 S.W.3d at 898. If the State fails to meet its burden of proof, the trial court abuses its discretion by revoking community supervision. *Cardona*, 665 S.W.2d at 493–94.

**B.** **The trial court did not abuse its discretion in adjudicating guilt: the State proved by a preponderance of the evidence that Gray violated a condition of his community supervision by committing the offense of unlawful carrying of a weapon.**

The trial court did not abuse its discretion: the State proved by a preponderance of the evidence that Gray violated his community supervision by committing the offense of unlawful carrying of a weapon.

1. **Under Section 46.02, one way to commit the offense of unlawful carrying of a weapon is to carry the weapon while (among other things) being "engaged in criminal activity."**

Unlawful carrying of a weapon is codified in Texas Penal Code Section 46.02. Section 46.02(a-1) prohibits carrying handguns in motor vehicles under certain circumstances. It provides, in relevant part:

> A person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun in a motor vehicle . . . under the person's control at any time in which:
>
> . . .
>
> (2) the person is:
>
>> (A) engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic or boating[.]

TEX. PENAL CODE § 46.02(a-1)(2)(A).[3] Gray does not dispute that officers found a handgun in a vehicle he controlled and that he knowingly carried it on or about his person. He instead contends the evidence is insufficient to show he was "engaged in criminal activity" at the time. In other words, he argues that the State did not prove by a preponderance of the evidence that he was engaged in criminal activity at the time. We disagree.

---

[3] The State did not allege that Gray violated the supervision condition prohibiting him from possessing a firearm, nor did it allege that he was otherwise prohibited by law from possessing one. Instead, the State proceeded solely on a new law allegation that Gray committed unlawful carrying of a weapon under Texas Penal Code Section 46.02(a-1)(2)(A). We therefore confine our analysis to that provision.

**2. Section 46.02's "engaged in criminal activity" language broadly includes criminal action, other than that expressly excluded by the statutory terms.**

The Legislature adopted the "engaged in criminal activity" language of the Penal Code in 2007.[4] "Criminal activity" is not defined in Chapter 46. *See* TEX. PENAL CODE § 46.01 (definitions). Therefore, we interpret the term in accordance with the statute's plain meaning. *See Edwards v. State*, 666 S.W.3d 571, 575 (Tex. Crim. App. 2023).

When determining the plain meaning of an undefined statutory term, courts may consult dictionary definitions; we also read words in context and apply rules of grammar. *See Edwards*, 666 S.W.3d at 575 ("When there is no definition or technical meaning provided for a word or phrase, the terms are typically given their plain and ordinary meaning. In determining the plain meaning of an undefined statutory term, we can consult dictionary definitions, and we must read words in context, and apply rules of grammar.") (cleaned up).

"Criminal" means "of the nature of or involving crime," or "of or pertaining to crime or its punishment." *Criminal*, RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2d ed. 2001); *see also Criminal*, MERRIAM-WEBSTER.COM

---

[4] *See* Act of May 23, 2007, 80th Leg., R.S., ch. 693, § 1, 2007 Tex. Gen. Laws 1318, 1318 (codified at TEX. PENAL CODE § 46.02(a-1)(2)(A)).

DICTIONARY, https://www.merriam-webster.com/dictionary/criminal (last visited May 19, 2026) ("Criminal" means "relating to, involving, or being a crime.").

"Activity," in turn, means "a specific deed, action, function, or sphere of action." *Activity*, RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2d ed. 2001); *see also Activity*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/activity (last visited May 19, 2026) (defining "activity" as "the quality or state of being active: behavior or actions of a particular kind").

Section 46.02(a-1) further provides that not all "criminal activity" qualifies; instead, the "criminal activity" at issue must be something "other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic or boating." TEX. PENAL CODE § 46.02(a-1)(2)(A). Beyond this, the statute does not limit the meaning of the term "engaged in criminal activity."

Thus, applying the plain text, and as Texas courts have concluded, "criminal activity" in Section 46.02(a-1) broadly encompasses criminal action or function, other than a Class C misdemeanor violation of a law or ordinance regulating traffic or boating. *See id.*; *see also, e.g.*, *Rodriguez v. State*, No. 14-23-00780-CR, 2024 WL 4234265, at *2–3 (Tex. App.—Houston [14th Dist.] Sept. 19, 2024, no pet.) (mem. op., not designated for publication) (misdemeanor possession of drug paraphernalia was criminal activity for unlawful-carrying prosecution); *State v.*

10

*Villanueva*, 672 S.W.3d 189, 194 (Tex. App.—Fort Worth 2023, pet. ref'd) (driving while intoxicated, a misdemeanor, was criminal activity for unlawful-carrying prosecution).[5]

Notably, the Court of Criminal Appeals and other courts applying the identical phrase "engaged in criminal activity" in a different statute, Texas Penal Code Section 9.32 (which contains a similar statutory limitation),[6] have similarly interpreted the phrase to broadly include criminal behavior other than that expressly

---

[5]   *See also, e.g.*, *Brown v. Stensland*, No. CV H-25-2908, 2026 WL 739666, at \*10 (S.D. Tex. Feb. 11, 2026) (under Texas law, possession of marijuana is criminal activity under unlawful-carrying statute), *mem. & r. adopted*, 2026 WL 738621 (S.D. Tex. Mar. 13, 2026); *Sumrall v. State*, Nos. 12-20-00215-CR & 12-20-00216-CR, 2021 WL 4057247, at \*6 (Tex. App.—Tyler Aug. 25, 2021, no pet.) (mem. op., not designated for publication) (driving with invalid and suspended license after prior conviction for doing so was criminal activity); *Gandee v. State*, No. 13-18-00343-CR, 2019 WL 5609703, at \*4 (Tex. App.—Corpus Christi–Edinburg Oct. 31, 2019, no pet.) (mem. op., not designated for publication) (rejecting defendant's argument that driving while intoxicated was not criminal activity within the meaning of the unlawful-carrying statute).

[6]   Section 9.32 provides in relevant part as follows:

> (b) The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor:
>
> > (1) knew or had reason to believe that the person against whom the deadly force was used: . . . ;
> >
> > (2) did not provoke the person against whom the force was used; and
> >
> > (3) was not otherwise *engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic* at the time the force was used.

TEX. PENAL CODE § 9.32(b) (emphasis added).

11

excluded by that statute. *See, e.g.*, *Villarreal v. State*, 453 S.W.3d 429, 440 (Tex. Crim. App. 2015) (concluding that defendant was engaged in criminal activity when he threatened victim with physical harm in violation of Texas Penal Code Section 22.01(a)(2)); *Reyna v. State*, 597 S.W.3d 604, 606–07 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (treating cocaine possession as "criminal activity" and agreeing that term "encompass[es] any activity that constitutes a crime" (quoting *Barrios v. State*, 389 S.W.3d 382, 393 (Tex. App.—Texarkana 2012, pet. ref'd))).

Under Section 46.02(a-1)'s terms and Texas caselaw, the State must prove engagement in "criminal activity" as part of the unlawful-carrying offense. *See* TEX. PENAL CODE § 46.02(a-1); *Watts v. State*, 371 S.W.3d 448, 460 (Tex. App.— Houston [14th Dist.] 2012, no pet.) (to convict for unlawfully carrying a weapon, the State must prove "appellant intentionally or knowingly carried on or about his person a handgun in a motor vehicle at a time . . . when appellant was engaged in criminal activity"); *see also Villanueva*, 672 S.W.3d at 194 (explaining that the elements of Section 46.02(a-1) include "the elements of the criminal activity" itself).

But nothing in Section 46.02(a-1) requires the State to obtain a conviction for that underlying criminal activity—rather than to just prove it (under the applicable standard of proof). *See* TEX. PENAL CODE § 46.02(a-1).[7]

---

[7] Section 46.02(a-1) is structurally similar to the organized crime statute in Texas Penal Code Section 71.02, under which Texas courts likewise recognize that the State may prove the predicate offense as part of the prosecution for engaging in

12

**3.** **The evidence supports a reasonable belief that it is more probable than not that Gray was "engaged in criminal activity" at the time he carried a handgun.**

This record supports a reasonable belief that Gray was "engaged in criminal activity" related to narcotics[8] at the time he carried a handgun: possession of a controlled substance, or, at the least, attempted possession of a controlled substance. To be clear, this is true when setting aside the other offenses the State alleged here: unauthorized use of a vehicle under Texas Penal Code Section 31.07 and possession *with intent to deliver* a controlled substance under Texas Health & Safety Code Section 481.112.

---

organized criminal activity itself. *See, e.g.*, *Crumpton v. State*, 977 S.W.2d 763, 770 (Tex. App.—Fort Worth 1998, no pet.) (State "utilized the theft offense as the underlying offense to prosecute organized criminal activity"); *McBride v. State*, 803 S.W.2d 741, 744 (Tex. App.—Dallas 1990, pet. ref'd) (explaining that "[n]either the applicable statute nor the case law require a conviction on an underlying offense" to convict defendant for engaging in organized criminal activity).

[8] In the trial court, Officer Seidel attested that carrying a weapon becomes unlawful when a person carries a handgun while committing other criminal activity and that the other criminal activity here was narcotics-related:

> Q. Okay. So carrying the weapon in and of itself isn't a crime but doing it while you're committing other criminal activities then makes it a crime; is that right?
>
> A. Yes, sir.
>
> Q. Okay. And the other criminal activity in this case would be the narcotics?
>
> A. Yes, sir.

The State also argued in closing, as to "possession of the controlled substance," that Officer Seidel—relying on his training and experience—identified the substance as crystal methamphetamine.

### a. Possession

Start with possession of a controlled substance. Simple possession of a controlled substance (e.g., methamphetamine) is a lesser-included offense of possession with intent to deliver. *See* TEX. HEALTH & SAFETY CODE §§ 481.102(6), 481.115(a) (PG-1 possession); *cf. id.* § 481.112(a) (possession with intent to deliver); *see also Upchurch v. State*, 23 S.W.3d 536, 538 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (possession is a lesser-included offense of possession with intent to deliver).[9] For these purposes, we focus on the offense of mere possession.

First, possession of methamphetamine qualifies as criminal activity under the plain terms of Section 46.02(a-1)(2)(A). It is criminal behavior or a criminal action, as Texas courts have concluded. *See, e.g.*, *Rodriguez*, 2024 WL 4234265, at *2–3 (possession of drug paraphernalia, a "one-hitter" pipe, was "engaging in criminal activity").

So the question becomes, did the State show by a preponderance of the evidence that Gray was engaged in such criminal activity at the time? The answer is yes.

---

[9]  *See also Beasley v. State*, 426 S.W.3d 140, 144 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (notice of the State's intent to prosecute the defendant for a greater offense generally conveys notice of lesser-included offenses); *Lyons v. State*, 222 S.W.3d 658, 659–60 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (similar as to assault and attempted assault).

A person commits the offense of unlawful possession of a controlled substance if he (1) exercised control, management, or care over the substance in question and (2) knew the matter possessed was contraband. *See* TEX. HEALTH & SAFETY CODE §§ 481.002(38), 481.115(a) (criminalizing possession, which is defined as "actual care, custody, control, or management"); *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Burrell v. State*, 445 S.W.3d 761, 764 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

Mere presence in the same place as the controlled substance is insufficient to justify a finding of possession. *See Tate*, 500 S.W.3d at 413–14. But presence or proximity, when combined with other direct and circumstantial evidence— "affirmative links"—can establish knowing possession, and it is the logical force of the combined links, not their number, that controls. *See id.*; *Burrell*, 445 S.W.3d at 764–65.[10] In the community-supervision context applicable here, Texas courts have

---

[10]    In *Burrell*, this Court considered the following non-exhaustive list of affirmative links:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotics; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs

15

confirmed that, under the preponderance standard, possession may be proven through direct or circumstantial affirmative links. *See, e.g.*, *Black*, 411 S.W.3d at 28–30.

Here, Gray did not dispute that the substance found in the car with him was methamphetamine. He admitted he *knew* methamphetamine was in the vehicle. And Officer Seidel similarly testified that, based on his training and experience, the substance was methamphetamine.

Instead, Gray argued that the methamphetamine was not his. But Officer Seidel testified that the substance was found in the same bag as Gray's debit card, under the driver's seat, within his immediate reach.

It was for the trial court to decide credibility and the weight of conflicting evidence. *See Hacker*, 389 S.W.3d at 865. And under binding precedent, we are to view the evidence in the light most favorable to the ruling. *See Cardona*, 665 S.W.2d at 493; *Bell*, 649 S.W.3d at 898.

Under Texas law, the evidence that Gray controlled the vehicle, his admission that he knew the substance was methamphetamine and that he knew there was

---

were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

445 S.W.3d at 765 (quoting *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006)).

methamphetamine in the car (as well as the officer's testimony as to the substance), and the fact that the substance at issue was intermingled with his personal items (in the same bag as his debit card), under his seat and within his reach, supplied the "affirmative links" from which the trial court could have found by a preponderance of the evidence that Gray was in possession of a controlled substance. *See* TEX. HEALTH & SAFETY CODE § 481.115(a); *Tate*, 500 S.W.3d at 415–18 (reinstating possession conviction and holding that meth and syringe found in vehicle that defendant was driving—in plain view and within his reach—together with other circumstances furnished sufficient affirmative links); *Burrell*, 445 S.W.3d at 765–67 (sufficient affirmative links connected defendant to cocaine, and evidence supported finding defendant exercised care, custody, or control over cocaine); *Black*, 411 S.W.3d at 28–30 (affirmative links established possession under the preponderance standard to revoke community supervision; evidence showed defendant was in control of vehicle, had physical characteristics indicating consumption of marijuana, acted suspiciously, and marijuana was concealed in multiple layers of bags in trunk of car).

On this record—and acting as the sole judge of credibility and weight of the evidence—the trial court could have reasonably found, by a preponderance of the evidence, that Gray was engaged in criminal activity (methamphetamine possession), thereby satisfying Section 46.02(a-1)(2)(A). *See Hacker*, 389 S.W.3d

at 865; *Rodriguez*, 2024 WL 4234265, at *2–3 (officer testimony and defendant's admissions sufficed to establish "criminal activity" for unlawful-carrying prosecution, even though the State did not separately charge paraphernalia possession or receive laboratory results); *Sterling v. State*, 791 S.W.2d 274, 276–77 (Tex. App.—Corpus Christi–Edinburg 1990, pet. ref'd) (permitting officer identification of controlled substances without chemical analysis and resting revocation, in part, on that evidence).

### b. Attempted possession

Moreover, even if we were to assume the record did not show by the preponderance of the evidence possession of a controlled substance, we could conclude that this record shows by a preponderance of the evidence the elements of attempted possession, which nonetheless supports affirming.

Attempted possession of a controlled substance is a lesser-included offense of possession. *See* TEX. CODE CRIM. PROC. art. 37.09(4) (an offense is a lesser-included offense if it consists of an attempt to commit the offense charged); TEX. PENAL CODE § 15.01 (attempt statute); TEX. HEALTH & SAFETY CODE § 481.108 (incorporating Penal Code Title 4 (which includes attempt) into Chapter 481 offenses); *id.* § 481.115(a) (PG-1 possession); *see also Ex parte Mable*, 443 S.W.3d 129, 130–31 (Tex. Crim. App. 2014) (recognizing attempted possession of a controlled substance as a lesser-included offense of possession).

18

A person commits attempted possession of a controlled substance if (1) he had the specific intent to possess a controlled substance, (2) he took some overt act amounting to more than mere preparation, and (3) the act tended but failed to effect the intended possession. *See* TEX. PENAL CODE § 15.01(a); TEX. HEALTH & SAFETY CODE § 481.115(a); *Giddings v. State*, 816 S.W.2d 538, 540 (Tex. App.—Dallas 1991, pet. ref'd); *Rivas v. State*, 787 S.W.2d 229, 231–33 (Tex. App.—Corpus Christi–Edinburg 1990, pet. ref'd); *see also Graff v. State*, 65 S.W.3d 730, 742–43 (Tex. App.—Waco 2001, pet. ref'd) (elements for attempted delivery of a controlled substance). Specific intent may be inferred from the defendant's acts. *See Giddings*, 816 S.W.2d at 540; *Rivas*, 787 S.W.2d at 233.

As an initial matter, this too could constitute "criminal activity" (criminal behavior or action) under the plain terms of Section 46.02(a-1)(2)(A). So again, the question is whether the State proved this activity by the preponderance of the evidence.

Texas courts have upheld attempted drug possession convictions on circumstantial evidence of intent and overt acts—even when completion was impossible or unproven by laboratory results. *See, e.g.*, *Giddings*, 816 S.W.2d at 539–40 (rejecting factual-impossibility defense and affirming attempted possession conviction where defendant arranged a purchase, arrived with substantial cash, and moved to consummate the deal even though no cocaine existed because the deal was

19

with undercover officers); *Rivas*, 787 S.W.2d at 232–33 (affirming attempted possession of cocaine where defendant went to drug-buy location, saw money displayed to undercover officers, and acted like a lookout—conduct that, together, showed specific intent to possess cocaine and an act beyond mere preparation); *see also Baxter v. State*, 718 S.W.2d 28, 30–32 (Tex. App.—Eastland 1986, pet. ref'd) (evidence at trial was sufficient to support attempted aggravated manufacture of methamphetamine; absence of a critical ingredient (lack of methylamine) did not defeat attempt liability).

Applied here, Gray's admission that he knew there were drugs in the vehicle, the placement of the suspected methamphetamine in the same bag as his debit card under the driver's seat within his reach, and his control of the vehicle, support a finding that he intended to exercise control over contraband. Again, we are instructed to view the evidence in the light most favorable to the ruling. *See Cardona*, 665 S.W.2d at 493; *Bell*, 649 S.W.3d at 898. And on this record—acting as the sole judge of credibility and weight of the evidence—the trial court could have reasonably found by a preponderance of the evidence that Gray violated his terms of community supervision by engaging in "criminal activity" for purposes of Section 46.02(a-1)(2)(A) by engaging in attempted possession of methamphetamine. That is, the trial court could have found by a preponderance of the evidence that the evidence shows a specific intent to possess, coupled with an overt act—keeping the

20

substance among his personal effects and within immediate reach—that goes beyond mere preparation. *See Giddings*, 816 S.W.2d at 539–40; *Rivas*, 787 S.W.2d at 232–33; *see also Baxter*, 718 S.W.2d at 30–32.

\* \* \*

The greater weight of credible evidence before the trial court supports the trial court's reasonable belief that it is more probable than not that Gray violated his community supervision by committing the new offense of unlawful carrying of a weapon. Therefore, the trial court did not abuse its discretion in adjudicating guilt. *See Rickels*, 202 S.W.3d at 763–64 (revocation/adjudication standard of review).

### 4.    Gray's arguments do not change this conclusion.

Gray contends that, because the trial court found the unauthorized-use allegation "not true" and the possession-with-intent-to-deliver allegation "not proven," the State cannot show he was "engaged in criminal activity" when he carried the handgun. We disagree.

To begin, the unauthorized-use allegation was wholly independent of the "criminal activity"—possession and attempted possession—discussed above. A conclusion that the State did not prove that one used a vehicle without authorization has no bearing on whether the person undertook separate criminal behavior concerning drugs.

Nor does the possession-with-intent-to-deliver allegation change the result here. Gray is correct that the trial court said that possession with intent to deliver was "not proven," and the court declined to enter a "true" or "not true" finding on that allegation.

But possession *with intent to deliver* requires additional proof beyond simple possession; it requires proof of intent to deliver. Specifically, "[i]n a possession with intent to deliver case, the State must prove that the defendant: (1) exercised care, custody, control, or management over the controlled substance; (2) *intended to deliver the controlled substance to another*; and (3) knew that the substance in his possession was a controlled substance." *Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing TEX. HEALTH & SAFETY CODE §§ 481.002(38), 481.112(a)) (emphasis added). Yet the intent to deliver element is not a part of a simple possession charge. *See Tate*, 500 S.W.3d at 413. An offense is a lesser-included offense of another if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. art. 37.09(1); *see also Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016).

That a record might not prove possession with the intent to deliver does not mean that it does not nevertheless prove possession or attempted possession. Accordingly, failure to prove possession *with intent to deliver* does not preclude a

22

finding that the defendant nevertheless possessed (or attempted to possess) the controlled substance. And for the reasons explained above, this record supports a reasonable belief that Gray engaged in criminal activity by possessing methamphetamine, or at least attempting to possess it.[11]

To the extent Gray argues the evidence was insufficient because no laboratory testing was performed on the substance, Texas courts have long upheld revocations where, as here, a trained officer identified a controlled substance without laboratory testing (again, the trial court is the sole judge of credibility and weight of the evidence under the applicable standard). *See, e.g.*, *Jordan v. State*, 486 S.W.2d 784, 785 (Tex. Crim. App. 1972) (police officer's expert opinion identifying substance, without scientific testing, was sufficient to support probation revocation); *Sterling*, 791 S.W.2d at 276–77 (similar); *see also Rodriguez*, 2024 WL 4234265, at *2–3 (officer testimony and defendant's admissions sufficed to establish "criminal

---

[11]    It also bears noting that Gray takes the trial court's "not proven" remark out of context. The court found the unlawful carrying of a weapon allegation true and stated that, based on the evidence, "truthfully you're right, [Gray]'s probably out there dealing dope at a bar, with a gun, at 2:00 o'clock in the morning, in what at [sic] amounts to be a stolen car." The trial court also noted that, although lab results were not yet in, "everybody's agreed, they're drugs . . . even without the analysis I have no doubt they were drugs." The trial court declined to rule on the possession-with-intent allegation, explaining: "I'm not going to say true or untrue. I'm going to say not proven because I think the State should get the lab results and prosecute [Gray] further . . . . And I hope when they do, if you're found guilty, they'll stack that sentence on top of my about to be sentence."

23

activity" for unlawful-carrying prosecution even though the State did not obtain laboratory results).

Further, even without laboratory testing, the facts here are sufficient for, at a minimum, attempted possession, as discussed above. The Court of Criminal Appeals has recognized that a defendant who believes the substance is contraband and takes steps to possess it can be guilty of attempted possession, notwithstanding later testing showing the substance was not contraband. *See Mable*, 443 S.W.3d at 130–31 (recognizing that, even when lab testing later shows no controlled substance, defendant could still be guilty of attempted possession, a lesser-included offense of possession). As discussed, the record here permits a preponderance finding that Gray was engaged in criminal activity of either (1) possession or, at the least (in the alternative), (2) attempted possession.

## CONCLUSION

We affirm the judgment of the trial court.


Jennifer Caughey
Justice

Panel consists of Justices Gunn, Caughey, and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).

24